**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**GREGORY ROBB**                                                                            **PLAINTIFF**

**V.**                                                             **NO. 4:15-CV-00162-DMB-JMV**

**JANTRAN, INC.**                                                                 **DEFENDANT**

**ORDER DENYING MOTION TO COMPEL**
**MAINTENANCE AND CURE PAYMENTS**

This Jones Act action is before the Court on Gregory Robb's motion to compel cure payments, Doc. #5, and his motion for leave to file supplemental exhibits in support of the motion, Doc. #17. For the reasons below, the motion for leave will be granted and the motion to compel, which this Court has construed as a motion for partial summary judgment, will be denied.

**I**
**Procedural History**

On November 13, 2015, Gregory Robb filed a complaint against his employer, Jantran, Inc., claiming that Jantran violated the Jones Act, breached its warranty of seaworthiness, and was obligated to pay maintenance and cure. Doc. #1.

On December 22, 2015, before Jantran answered the complaint,[1] Robb filed a motion to compel cure payments to allow for treatment from a doctor of his choice. Doc. #5. On March 4, 2016, Robb moved for an expedited hearing on the motion to compel maintenance and cure. Doc. #11. Jantran responded to Robb's motion to compel on March 28, 2016, arguing that the motion was procedurally improper. Doc. #19. On March 31, 2016, Robb replied. Doc. #21.

---

[1] Jantran answered Robb's complaint on January 29, 2016. Doc. #7.

On May 6, 2016, this Court issued an order finding that the motion to compel maintenance and cure should be construed as a motion for partial summary judgment. Doc. #22. The order, which granted in part and denied in part the motion to expedite, granted Jantran an opportunity to respond in opposition to the motion and Robb an opportunity to reply. Jantran filed a supplemental response on May 13, 2016, and Robb filed a supplemental reply on May 20, 2016. Doc. #23; Doc. #26. On June 6, 2016, Robb filed a "Motion for Leave to File Supplemental Exhibit F in Support of Plaintiff's Motion to Compel." Doc. #27. Jantran did not respond to the motion for leave.

## II
## Motion for Leave

In his motion for leave, Robb seeks leave to submit an affidavit addressing factual assertions made in Jantran's supplemental response. Insofar as Jantran has not responded to Robb's request, the motion will be granted as unopposed. *See* L.U. Civ. R. 7(b)(E) ("If a party fails to respond to any motion, other than a dispositive motion, within the time allotted, the court may grant the motion as unopposed.").

## III
## Motion for Maintenance and Cure

### A. Doctrine of Maintenance and Cure

A shipowner has an "ancient duty to provide maintenance and cure for the seaman who becomes ill or is injured while in the service of the ship" which "arises irrespective of the absence of shipowner negligence and indeed irrespective of whether the illness or injury is suffered in the course of the seaman's employment." *Vella v. Ford Motor Co.*, 421 U.S. 1, 3–4 (1975). "Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is

2

incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962). Specifically, "[m]aintenance is a substitute for the seamen's free shipboard food and lodging" while "[c]ure is the equivalent of the medical attention the seaman would be entitled to receive while at sea." *Kirk v. Allegheny Towing Inc.*, 620 F. Supp. 458, 462 (W.D. Pa. 1985) (citing *Calmar S. S. Corp. v. Taylor*, 303 U.S. 525, 528 (1938)). The United States Supreme Court has held that seamen are wards of the court and ambiguities or doubts about a ship owner's liability for maintenance and cure "are resolved in favor of the seaman." 369 U.S. at 532.

### B. Standard on Motion for Maintenance and Cure

As this Court explained in its May 6, 2016, order, Robb's motion for maintenance and cure must be analyzed under the most analogous rule of civil procedure which, in this case, is Federal Rule of Civil Procedure 56. However, such analysis must be conducted in a manner consistent with the Supreme Court's dictate that ambiguities or doubts should be resolved in favor of the seaman seeking maintenance and cure. Practically, this approach applies a Rule 56 standard to a seaman's motion to compel but employs a presumption in favor of the seaman's claim. This presumption, of course, does not give a court license to resolve disputed issues of fact. *Bloom v. Weeks Marine, Inc.*, 225 F.Supp.2d 1334, 1336 (M.D. Fla. 2002) ("[A] suit for maintenance and cure presents questions of fact. It should not be disposed of by summary judgment nor should payment be decreed on motion.").

Under Rule 56, "[s]ummary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 411 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 22–23 (1986)). To award summary judgment,

3

"[a] court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Norwegian Bulk Transp. A/S,* 520 F.3d at 411–12 (internal quotation marks and citation omitted). To this end, "[t]he moving party bears the burden of establishing that there are no genuine issues of material fact." *Id.* at 412.

"If … the nonmoving party bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar evidence negating the nonmoving party's claim, or by pointing out to the district court the absence of evidence necessary to support the nonmoving party's case." *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998) (citation omitted). If the moving party makes the necessary demonstration, "the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Id.* In making this showing, "the nonmoving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Cotroneo v. Shaw Env't & Infrastructure, Inc.,* 639 F.3d 186, 191–92 (5th Cir. 2011) (citation and internal punctuation omitted). When considering a motion for summary judgment, the Court "resolve[s] factual controversies in favor of the nonmoving party." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

# IV
## Factual Background

Gregory Andre Robb is a forty-eight-year-old seaman who, excluding an eight-month period in the early 2000s, has been employed by Jantran since approximately 1993. During his employment with Jantran, but before the injury which forms the basis of this suit, Robb "had experienced relatively minor work-related incidents and accidents, a couple of which required

minor medical treatment and which involved me missing a couple of days work." On those occasions, Robb "followed the direction and instruction of Jantran's management and went to the appointed medical clinic."

### A. Injury and Diagnosis

In November 2014, Robb was employed by Jantran as a "first mate." In the "late evening" of November 3, 2014, Robb suffered a lower-back injury "while putting together a tow of barges intended to be attached the M/V David Work." Robb "immediately" reported the injury to Mike Williams, the captain of the vessel. The following day, Robb's lower-back pain intensified to the point where he needed to return home to Rosedale, Mississippi. To this end, Jantran personnel "heading southbound" picked Robb up from his vessel and delivered him home.

At some point, Jantran personnel "instructed" Robb to go to the Greenville Family Medical Clinic ("Greenville Medical") for an "initial evaluation."[2] Robb underwent this initial evaluation on November 6, 2014. That day, Robb received a diagnosis of a "lumbar strain." On November 18, 2014, Robb underwent a lumbar spine MRI at Delta Regional Medical Center in Greenville. The MRI revealed "[n]arrowing d[i]slocation of the disc ... at L4-5 and L5 S1 with annular bulging noted. Mild degenerative facet disease at L4-5 and L5 S1."[3]

---

[2] According to Robb, "[i]n recent years, it ha[d] become the practice of Jantran ... to have its employee physicals, employee urine tests, and initial treatment for injured employees take place at the Greenville Family Medical Clinic."

[3] The lumbar portion of the spinal cord consists of "five lumbar segments (L1-L5) and from which five pairs of lumbar spinal nerves originate." STEDMANS MEDICAL DICTIONARY 659210. The sacral spinal cord segments are designated S1 through S5. STEDMANS MEDICAL DICTIONARY 806320.

Robb's care was initially supervised by Joe Pulliam, M.D.,[4] and two nurse practitioners, Carrie Janous and Dana Lyles. From November 2014 until February 2015, Pulliam attempted to treat Robb with various medications, physical therapy, and at least one injection. The treatment appeared to work and, at some point, Robb attempted to return to work. However, while working off-shore, the back pain returned "much worse."

On March 16, 2015, at Lyles' request, W. Lynn Stringer, M.D., saw Robb for the purpose of a consultation. Following the consultation, Stringer diagnosed Robb with "[d]egenerative disc and joint disease, L4-L5 and L5-S1," but observed that "I do not see anything for which I recommend any surgical intervention. I would recommend evaluation and treatment by one of our physical medicine and rehabilitation physicians."

On April 9, 2015, Robb, at the direction of Stringer, underwent a consultation by David C. Collipp, M.D., at NewSouth NeuroSpine, LLC, in Flowood, Mississippi. During this consultation, Robb informed Collipp that he "has not had Physical Therapy in several months now." Collipp ordered physical therapy and noted that, while he "[e]xpect[ed] full recovery," Robb "may have problems with return to work for age and slow healing at this point." Collipp recommended "[l]ight-medium duty ... and no restrictions for home activity."

On June 4, 2015, Robb presented to Collipp "with no improvement from Physical Therapy." An MRI revealed "only mild osteoarthritic changes at L4-5 and L5-S1." Collipp noted that Robb "is not likely to be functionally able to continue ... work [on a boat], given symptoms ...." Collipp believed that the lumbar pain was "[p]ossibly related to the facet joint disease" and noted that he would "arrange injection." Nevertheless, Collipp noted that "[f]rom

---

[4] The parties dispute whether Pulliam may be considered Robb's treating physician. Resolution of this issue is not required to dispose of Robb's motion.

an injury standpoint for the muscle he is at Maximum Medical Improvement. Injection may reduce symptoms further, but will not change a Permanent Partial Impairment at this point."

On June 25, 2015, "at the request of Dr. Collipp for a possible injection," Robb was evaluated by Jeffrey Laseter, M.D., a physician in NewSouth's Division of Pain Management. Laseter recommended a change in medication and a "possible lumbar facet injection ... when his hypertension is better controlled." Laseter performed the injection on July 16, 2015.

On July 31, 2015, Robb returned to Collipp "with no further lasting improvement." Collipp noted that the "[i]njection stopped the pain 100% for seven days, confirming this is facet joint disease. His injury is lumbar strain. He has no lasting impairment from lumbar strain, but he has limitations and pain for facet joint disease such that he is limited to max lifting about 50-60 pounds. Much less than required for his work." Collipp concluded that the facet joint osteoarthritis "was not caused by or aggravated by the injury." Collipp once again concluded that the lumbar strain was "at Maximum Medical Improvement."

On August 11, 2015, Laseter noted, "The patient has had no history of low back pain until his work injury in November 2014 when he was working on a barge and he was using a ratchet and he was twisting and turning .... The patient's pain is directly related to his work injury in November 2014 and the facet arthopathy is consistent with his injury."[5] Laseter "recommended diagnostic medial branch blocks of the dorsal ramus of the L5 nerves bilaterally and the dorsal ramus of the L5 nerves bilaterally." Laseter performed these procedures the same day.

---

[5] "Arthopathy" is defined as "[a]ny disease affecting a joint." STEDMANS MEDICAL DICTIONARY 76130. "Facet" is defined as "[a] small smooth area on a bone or other firm structure, usually an articular surface covered in life with articular cartilage." STEDMANS MEDICAL DICTIONARY 313360.

On August 27, 2015, Laseter, noting that Robb had "failed extensive conservative treatment," "recommended radiofrequency neurotomy of the medial branches of the L4 nerves bilaterally and the dorsal ramus of the L5 nerves." Laseter performed these procedures on September 4, 2015.

On September 23, 2015, Robb presented to Laseter with "developed pain radiating down his right leg" but "very little pain on the left side of his low back." Laseter noted, "I would like to start [Robb] in physical therapy when his hypertension is under control."

On October 8, 2015, Robb reported to Laseter that the radiofrequency procedure had been "helpful" and that his right leg pain was resolved. Robb reported a pain level of 1/10. Laseter diagnosed Robb with lumbar spondylosis.[6] Laseter noted that there was "positive mild tenderness to the lumbar spine" and recommended, "We will have the patient see his cardiologist about his hypertension, and we will start him in physical therapy when his hypertension is better controlled (three times a week for two weeks). We will set the patient back up for reevaluation and plan to release the patient back to work." Under the impression that Laseter had prescribed physical therapy sessions, Robb called the appointment coordinator at River City Rehabilitation to schedule a physical therapy session but was informed that Jantran had not approved the sessions.

### B. Visit to Dr. Adam Lewis

On October 26, 2015, Robb, at his own expense, went to an initial appointment with Adam I. Lewis, M.D., of Jackson Neurosurgery Clinic in Jackson, Mississippi. Robb provided Lewis a copy of the November 18, 2014, MRI. Following the appointment, Lewis noted that an

---

[6] Spondylosis is "often applied nonspecifically to any lesion of the spine of a degenerative nature." STEDMANS MEDICAL DICTIONARY 840410.

8

MRI of Robb's lumbar spine from an unknown facility "shows degenerative disc disease with possible annular tears L4/5 and L5/SL." Lewis recommended a "lumbar discogram/CT scan and follow up afterwards."

At some point, Robb "requested that Jantran approve [the] initial appointment with Dr. Lewis and the follow-up treatment Dr. Lewis ... recommended." On November 24, 2015, the law firm of Westerfield, Janoush & Bell, P.A., sent a letter on behalf of Jantran to Robb's counsel stating:

> I received your letter of November 16,2015 regarding the above referenced new filing. I will be filing a response upon return from the Thanksgiving holiday.
>
> Your letter requests that JANTRAN approved treatment for Mr. Robb at the Jackson NeuroSurgery Clinic. Is this correct? No one at JANTRAN is aware of any treatment by Mr. Robb at this medical facility. If Mr. Robb is being treated by DR. [sic] Lewis at this facility, it has not been approved by JANTRAN. Further, any treatment by Mr. Robb at this facility will not be approved.
>
> Mr. Robb has been treated by Dr. Jeffery Laseter at NewSouth NeroSpine in Jackson, Mississippi for quite some time. Mr. Robb last received treatment from Dr. Laseter on October 8, 2015. At that time physical therapy was ordered. We understand from Dr. Laseter that Mr. Robb did not appear for the physical therapy treatment. Accordingly he has been released to return to work. We are currently waiting on Mr. Robb to return to his job.

## V
## Analysis

In his motion, Robb asks this Court to "order Jantran to pay for the medical treatment of Gregory Robb from Adam I. Lewis and other health care providers Lewis may reasonably refer Robb to for treatment." Robb also asks that Jantran be ordered to report to the Court "on a periodic basis ... the medical course of treatment provided to Gregory Robb." Jantran responds "that it is has fulfilled its obligations concerning the duty of maintenance and cure," that Robb's "decision to not follow the doctors [sic] orders and complete the course of treatment ordered by

his physicians prevents him from receiving any further maintenance and cure," and that Robb has reached maximum medical improvement.

### A. Satisfaction of Maintenance and Cure

Although less than clear, it appears Jantran argues that it is not required to pay for Robb's treatment by Lewis because it has "provided medical treatment based upon recommendations made by the Plaintiff's physicians." Jantran contends Robb "received medical treatment. His treatment was based upon the doctors' opinions that the Plaintiff suffered from degenerative disc disease which was pre-existing any injury. This does not support the Plaintiff's lawsuit. He has not been denied treatment."

Under the doctrine of maintenance and cure, a "seaman has a right to be treated by the physician of his choice [so long as the treatment is not] overly expensive or unnecessary ...." *Matter of Cooper/T. Smith Stevedoring Co., Inc.*, 942 F.Supp. 267, 269 (E.D. La. 1996). "The employer has the burden of showing that treatment is excessive." *Id*.

Robb argues that he should be allowed to choose his own healthcare provider. Jantran has offered absolutely no evidence that the treatment recommended by Lewis is or was excessive. Therefore, to the extent Robb remains entitled to maintenance and cure, he is entitled to be treated by Lewis.

### B. Abandonment

"The general rule is well settled that a seaman's right to maintenance and cure is forfeited by a willful rejection of the recommended medical aid." *Coulter v. Ingram Pipeline, Inc.*, 511 F.2d 735, 737 (5th Cir. 1975). This rule does not, however, apply where "there existed any extenuating circumstances which made the [seaman's] failure to follow the prescribed regimen either reasonable or something less than a willful rejection." *Id*. "The forfeiture of maintenance

and cure argument is an affirmative defense." *Ruiz v. Plimsoll Marine, Inc.*, 782 F.Supp. 315, 317 (M.D. La. 1992). Accordingly, where, as here, a seaman seeks summary judgment on the issue of maintenance and cure over a claim of forfeiture, the seaman need only point to the absence of evidence supporting forfeiture. *Covan World Wide Moving, Inc.,* 144 F.3d at 380. The burden then shifts to the shipowner to show willful rejection. *Id*.

>In its supplemental response, Jantran argues:
>
>In this case physical therapy was ordered by Dr. Laseter to begin once Mr. Robb had seen his cardiologist to get his hypertension under control. The Plaintiff chose not to attend the physical therapy which was ordered and by law he has abandoned the treatment provided to him and has waived his claim to any additional maintenance and cure. The same result should apply here. JANTRAN should be granted a judgment as a matter of law on Robb's claim for maintenance and cure.

Robb replies that the undisputed evidence shows that he attempted to attend the physical therapy but was told that Jantran had not approved such therapy.

The Court agrees with Robb. The undisputed evidence shows that Robb attempted to pursue the prescribed physical therapy but was told such therapy had not been approved. Under these circumstances, the Court must conclude that Jantran has not shown a genuine issue of material fact as to willful rejection of recommended medical aid. Accordingly, summary judgment may not be denied on the basis of abandonment.

### C. Maximum Medical Improvement

"Under the general maritime law, a seaman ... is entitled to maintenance and cure from his employer for injuries *incurred or aggravated* in the service of the vessel." *Weeks Marine, Inc. v. Watson*, __ F.Supp.3d __, No. 15-600, 2016 WL 3027430, at *6 (E.D. La. May 27, 2016) (emphasis added) (citing *The Osecola*, 189 U.S. 158, 175 (1903)). Accordingly, "a seaman may be entitled to maintenance and cure even for a preexisting medical condition that recurs or

11

becomes aggravated during his service." *Messier v. Bouchard Transp.*, 688 F.3d 78, 82 (2d Cir. 2012). Thus, "[b]efore recovering maintenance and cure, the seaman bears the burden of establishing ... his illness or injury occurred, was aggravated or manifested itself while in the ship's service." *Smith v. Basic Marine Servs., Inc.*, 964 F.Supp.2d 597, 608 n.19 (E.D. La. 2013).

Once entitlement to maintenance and cure has been established, it must be paid until the seaman reaches maximum medical recovery, also known as maximum medical improvement. *Vaughan*, 369 U.S. at 532; *Watson*, 2016 WL 3027430, at *5. "After a seaman has proved his initial entitlement to maintenance and cure, the burden shifts to the ship owner to prove that maximum cure has been reached." *Watson*, 2016 WL 3027430, at *6 (citing 1 ADMIRALTY & MAR. LAW § 6-33 (5th ed.)); *see Smith v. Del. Bay Launch Serv., Inc.*, 972 F.Supp. 836, 848 (D. Del. 1997) ("Although the injured seaman bears the burden of establishing that he is eligible for maintenance and cure, the shipowner has the burden of proving that maximum cure has been reached.").

Maximum medical improvement "is achieved when it appears probable that further treatment will result in no betterment of the seaman's condition, a determination that would be appropriate if the seaman's injury is incurable or future treatment would merely relieve pain and suffering but not otherwise improve the seaman's physical condition." *Alario v. Offshore Serv. Vessels, L.L.C.*, 477 F. App'x 186, 187 (5th Cir. 2012) (internal quotation marks omitted) (citing *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979)). To support a finding of maximum cure, a medical "determination should be unequivocal." *Tullos v. Res. Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985). "Even though a seaman may have been compensated for maintenance and cure until maximum cure has been achieved, nothing would prevent him from

later bringing suit if, for some reason, there suddenly exists a possibility of further improvement." 1B-IV BENEDICT ON ADMIRALTY § 48 (citing *Calmar S.S. Corp*, 303 U.S. 525).

Jantran argues that Robb is no longer entitled to maintenance and cure because one of his "physicians has clearly opined that [he] has reached maximum medical improvement." Robb responds that he is merely "asking ... that Jantran be ordered to pay for what amounts to a second opinion from Dr. Lewis and/or health care providers in and around the Cleveland and/or Jackson, Mississippi, area so that he can determine exactly what is wrong with his lower back, and for further and additional appropriate medical treatment, if necessary, after a full diagnostic work-up is accomplished." In essence, the parties disagree as to whether Robb has reached maximum medical improvement.

On the issue of maximum medical improvement, the evidence is somewhat mixed. Collipp's notes reflect an unequivocal conclusion that Robb received maximum medical improvement as to the lumbar injury and that Robb's facet joint osteoarthritis was not caused or aggravated by the injury. Laseter, in contrast, opined that Robb's degenerative facet issues were "consistent" with his injury. Lewis found that Robb suffered from a "degenerative disc disease with possible annular tears L4/5 and L5/S1."

The undisputed evidence reveals that Robb has been treated for a lumbar strain and for degeneration in his spine. There is no disagreement that Robb's lumbar strain, which was indisputably suffered on the ship, reached maximum medical improvement. However, while there is no evidence that Robb's degenerative back changes have reached maximum medical improvement, there is a genuine issue of material fact as to whether the diagnosed degeneration occurred or was aggravated during his employment with Jantran, so as to justify a maintenance

and cure obligation.[7] Accordingly, Robb's motion for partial summary judgment on the issue of maintenance and cure must be denied. *See Baucom v. Sisco Stevedoring, LLC*, 506 F.Supp.2d 1064, 1074–75 (S.D. Ala. 2007) (denying seaman's motion for summary judgment where "the summary judgment record [was] rife with genuine questions of material fact as to whether [seaman] reached maximum cure with respect to ... back strain").

## VI
## Conclusion

For the reasons above, Robb's motion for leave to supplement the record [27] is **GRANTED**; and Robb's motion to compel maintenance and cure payments [5] is **DENIED**.

**SO ORDERED**, this 16th day of August, 2016.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[7] In the memorandum brief accompanying his motion for summary judgment, Robb suggests that Collipp was "tilted" toward Jantran. Issues related to an expert's bias and objectivity relate to the weight, not the admissibility, of the expert's opinion. *Fick v. Exxon Mobil Corp.*, No. 13-6608, 2016 WL 483198, at *3 n. 31 (E.D. La. Feb. 8, 2016) (citing *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1307 (5th Cir. 1991). In deciding a motion for summary judgment, a court should not make credibility determinations or weigh the evidence. *Harvill v. Westwards Commc'ns, L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005).